IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS A. BENNETTA,

               Plaintiff,

    v.

US AIRWAYS GROUP, INC., and RONALD
HARBINSON,

               Defendants.

CIVIL ACTION
NO. 13-5463

## OPINION

**Slomsky, J.**                                                **May 12, 2014**

## I.   INTRODUCTION

On September 18, 2013, Thomas Bennetta ("Plaintiff") filed a Complaint against US

Airways Group, Inc. and Ronald Harbinson (collectively "Defendants"), alleging discrimination,

retaliation, and aiding and abetting, in violation of the Americans with Disabilities Act ("ADA"),

42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat.

Ann. §§ 951-963.  (Doc. No. 1.)  Plaintiff claims that Defendants discriminated against him

because of his disability, an anxiety disorder, and subsequently retaliated against him after he

asserted charges of discrimination.  Defendants answered the Complaint, and on January 22,

2014, filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure

12(c).  (Doc. No. 7.)  The Motion is ripe for disposition, and for reasons that follow, the Court

will grant Defendants' Motion.[1]

---

[1] In reaching this decision, the Court has considered the following: the Complaint (Doc. No. 1),
the Answer (Doc. No. 5), Defendants' Motion for Judgment on the Pleadings (Doc. No. 7),
Plaintiff's Response in Opposition (Doc. No. 10), Defendants' Reply in Further Support (Doc.
No. 13), the Sur Reply of Plaintiff (Doc. No. 14), Defendants' supplemental brief (Doc.
No. 20), Plaintiff's supplemental brief (Doc. No. 21), and the arguments made by counsel for

## II.     BACKGROUND

Plaintiff is employed by US Airways Group, Inc. ("US Airways") as a Fleet Service

Agent.  (Doc. No. 1 at ¶ 15.)  In April 2008, Plaintiff applied for another position at US Airways

in the Stores Department and was offered the job.[2]  (Id. at ¶ 17.)  After Plaintiff was offered this

position, he experienced a severe anxiety attack.  (Id. at ¶ 18.)  Plaintiff suffers from an anxiety

disorder which renders him disabled.  (Id. at ¶¶ 1, 18, 33.)  He alleges that Defendants knew he

suffered from this disability.  (Id. at ¶¶ 33, 35.)  Due to his anxiety disorder, Plaintiff contends

that the Stores Department Supervisor, Andre Peace ("Peace") confronted Plaintiff and

demanded that he make an immediate decision regarding the Stores Department job.[3]  (Id. at

¶ 19.)  In a panic, Plaintiff wrote a one or two sentence memo, withdrawing his acceptance of the

position.  (Id. at ¶ 20.)  Supervisor Peace took the memo from Plaintiff and said, "I can't deal

with this anymore. You have to make a decision now, today or you won't have it."  (Id.)  Peace

then submitted the memo to the Maintenance Administration without Plaintiff's consent.  (Id.)

Within minutes of Peace submitting the memo, Plaintiff contacted the Maintenance

Administration and said that he wanted to withdraw the memo.  (Id. at ¶ 22.)  Someone in

Maintenance Administration told Plaintiff that the memo would be withdrawn if Plaintiff

reported to work on July 3, 2008.  (Id.)  On July 3, 2008, Plaintiff reported to work in the Stores

Department.  (Id. at ¶ 23.)  He worked for approximately two hours before he was told that he

did not have the job.  (Id.)  Plaintiff understands that the position was later filled by someone

the parties at a hearing on the Motion held on March 14, 2014.

[2] In the administrative complaints that Plaintiff submitted to the Pennsylvania Human Relations
Commission ("PHRC"), Plaintiff alleged that he was offered the job in May 2008.  (Doc. No. 5,
Ex. A; Doc. No. 10, Ex. A.)  Plaintiff does not provide information regarding the title of the
position or what the job entailed.

[3] In the administrative complaints that Plaintiff submitted to the PHRC, Plaintiff alleged that this
conversation took place on June 27, 2008.  (Doc. No. 5, Ex. A; Doc. No. 10, Ex. A.)

else.[4]  (Id.)  Plaintiff resumed his former job in Fleet Services where he earns much less than he

would have earned in the job in the Stores Department.  (Id. at ¶ 24.)  Plaintiff also lost union

seniority he had accrued.  (Id.)

 After learning he did not have a job in the Stores Department, Plaintiff filed a grievance,

and a hearing was held sometime in January 2009.  (Id. at ¶¶ 26-27.)  The grievance was denied.[5]

(Id. at ¶ 27.)  On May 3, 2010, over a year after his grievance was denied, Plaintiff spoke with

George Raymond ("Raymond"), a manager of Labor Relations at US Airways.  (Id. at ¶¶ 28-29.)

Raymond told Plaintiff that Defendant Ronald Harbinson ("Harbinson") had the authority to alter

the final decision on Plaintiff's grievance.  (Id. at ¶ 29.)  Harbinson is the Managing Director of

Labor Relations-Ground.  (Id. at ¶ 5.)

 On or about May 6, 2010, Plaintiff called Harbinson "to seek relief concerning his

employment with US Airways."  (Id. at ¶ 30.)  Harbinson told Plaintiff that he would call him

back at the end of the week but never did.  (Id. at ¶ 31.)  On May 25, 2010, Plaintiff called again

and left a message for Harbinson, who did not respond.  (Id. at ¶ 32.)   Plaintiff alleges that he

"took these actions in an effort to rectify his situation and to obtain an accommodation such that

Plaintiff could pursue employment in the Stores Department."  (Id. at  ¶ 33.)

---

[4] Defendants provide a slightly different account of the facts.  According to Defendants, on April
5, 2008, Plaintiff bid for an upgrade to a position as a stock clerk in the Stores Department.
(Doc. No. 5 at ¶ 17.)  Ten days later, on April 15, 2008, US Airways informed Plaintiff that he
would be awarded the position.  (Id.)  The next day, on April 16, 2008, Plaintiff faxed a letter to
US Airways, asking that he be removed from consideration for the stock clerk position.  (Id.)
On April 17, 2008, Plaintiff asked US Airways to disregard his fax from the previous day and
once again asked to be considered for the stock clerk job.  (Id.)  On June 27, 2008, after several
discussions with US Airways, Plaintiff submitted a letter declining the stock clerk position.
(Id.)  US Airways gave Plaintiff until June 30, 2008 to report to the stock clerk position.  (Id. at
¶ 22.)  This position was subsequently filled.  (Id. at ¶ 23.)

[5] Defendants allege that Plaintiff's grievance was denied on February 6, 2009.  (Doc. No. 5 at
¶ 26.)

On or about August 16, 2010, Plaintiff sent a letter to Harbinson, recounting the events that had transpired until that point.  (Doc. No. 1, Ex. A.)  The letter is reproduced in full:

As you remember, we had a telephone conversation on or about May 6, 2010 concerning my employment with US Airways.  I am employed in Philadelphia and told you that I am a member of the Fleet Services bargaining unit of the International Association of Machinists and Aerospace Workers (IAMAW).  I was given your name by Mr. George Raymond on May 3, 2010.  I previously spoke with Raymond concerning my January 2009 grievance proceedings that I believe were unfairly decided.  Mr. Raymond said he could not alter the decision but said I could speak with you.  Mr. Raymond indicated that you had the authority to help me.  I spoke with Mr. Raymond at the suggestion of Matthew Dietrich, a US Airways Human Resources Representative for the Maintenance Department.  Mr. Dietrich is fully aware of the history of my employment.   Under these circumstances I spoke with you.

Some time ago I applied for an upgrade to a position in the Stores Department that is covered by the Maintenance Contract of the IAMAW and was offered the position. At that time and before, I was experiencing a severe anxiety condition. After I was offered the position, I suffered a severe anxiety attack.  I am sure this attack caused difficulty in interacting with me.  In fact, due to my anxiety, Store Department Supervisor Andre Peace confronted me and demanded that I make a decision regarding my acceptance of the position.  In a panic, I wrote a one or two sentence memorandum withdrawing my acceptance.  Mr. Peace immediately took the memorandum from me and said, "I can't deal with this anymore" (referring to my anxiety condition) saying "You have to make a decision now, today or you won't have it" (which was an inaccurate representation since I had until the following week when I was to work in the new position).  Mr. Peace immediately submitted the memorandum to Maintenance Administration.  I never consented to Mr. Peace submitting the short memorandum and would not have done so had I not been improperly told that I had to make an immediate decision that triggered a panic attack.   Within minutes of Mr. Peace submitting the memorandum, I contacted Maintenance Administration and told them that I wanted them to withdraw the memorandum.  They said they would withdraw the memorandum if I reported to work the following week.  The report date was later extended to July 3, 2008.  I reported that day and was told that I did not have the position.

Suffice to say, in my opinion, Mr. Peace as a reasonable person was fully aware from my exhibited behavior that I was experiencing anxiety.  In this context, without my consent to submit the short memorandum to Maintenance Administration, I believe he did so in order to cease having to deal with my medical condition.  Notwithstanding, Maintenance Administration's agreement to the withdrawal of the memorandum and agreement to a start date of July 3, 2008, with which I complied, I ultimately was not permitted to work in the Store Department.  I grieved this decision and local maintenance management including

4

the Stores Department Manager, admitted at the hearing that the Memorandum was disregarded and I had been given a report date of July 3, 2008.  I testified at the January 2009 hearing that I had an anxiety condition at the time of the incident.  In spite of these facts the grievance was denied.  I now believe the denial was in discrimination of my disability.  Thereafter, I contacted you to seek relief.

After I explained these facts to you, you stated that you would call me by the end of the next week, which would have been by May 14, 2010.  I did not hear from you.  Thereafter, I called you again on or about May 25, 2010 and left a message on your answering machine asking you to call me.  You did not do so and have not yet contacted me.

I have a disability.  US Airways is aware of my disability.  I was given an opportunity to take the position in the Stores Department.  I contacted you at the direction of Mr. Raymond to whom I was referred by Mr. Dietrich.  I took these actions in an effort to rectify my situation and to obtain an accommodation such that I could pursue employment in the Stores Department.  As to the position, I was directed to take by reporting to work on July 3, 2008 and worked for approximately two hours before being told I did not have the job, I understand it was subsequently filled by another person.  As a consequence of these facts, I lost not only the Stores Department position and its higher wages, but also all of my accrued seniority under the Maintenance Collective Bargaining Agreement.  I understand that management can reinstate my seniority.

For the foregoing reasons, US Airways is fully informed of my disability.  I also believe that my disability caused the difficulties in my employment.  I am certain that I can perform the duties in of [sic] the Stores Department job with or without a reasonable accommodation.  I contacted you to seek your help.  I received no response from you even though you assured me you would contact me by on or about May 14, 2010.  Please respond to this letter and inform me whether you will assist me.

(Id.)  Plaintiff never received a reply to this letter and continues to work for US Airways as a

Fleet Service Agent.  (Doc. No. 1 at ¶ 39.)  Plaintiff believes that he was denied the position in

the Stores Department in July 2008 because he is disabled.  (Id. at ¶¶ 40-41.)  He also contends

that the lack of response to his May 2010 phone calls and August 2010 letter constitutes

impermissible retaliation.  (Id.)

On October 26, 2010, Plaintiff filed a handwritten, pro se administrative complaint with

both the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment

Opportunity Commission ("EEOC").  (Id. at ¶¶ 11-12; Doc. No. 10, Ex. A.)  Plaintiff listed US

Airways, Raymond, and Harbinson as Respondents.  (Doc. No. 10, Ex. A.)  In the administrative

complaint, Plaintiff alleged that Defendants discriminated against him when they denied him a

position in the Stores Department because of his disability.  He also alleged that Defendants

retaliated against him when they refused to respond to his calls and letters.  (Id.)  Defendants

point out, and Plaintiff does not dispute, that this handwritten PHRC complaint was never served

on any Defendant.  (Doc. No. 13 at 4.)

On December 21, 2010, Plaintiff filed another pro se administrative complaint with both

the PHRC and the EEOC.  (Doc. No. 5, Ex. A.)  Plaintiff made the same allegations of disability

discrimination and retaliation.  (Id.)  However, Plaintiff only named US Airways as a Respondent

in this complaint.  (Id.)  The administrative complaint was served on US Airways on January 6,

2011.  (Id.; Doc. No. 14 at 5.)  Defendants contend, and Plaintiff does not dispute, that Harbinson

was never served with a copy of the December 2010 complaint.  (Doc. No. 7-1 at 10 n.3; Doc.

No. 13 at 5; Doc. No. 14 at 5.)

On September 18, 2013, Plaintiff filed the instant action against US Airways and

Harbinson, alleging discrimination, retaliation, and aiding and abetting, in violation of the ADA

and the PHRA.  (Doc. No. 1.)  As noted previously, Plaintiff claims that Defendants

discriminated against him because of his disability by failing to give him the position in the

Stores Department.  He also contends that they retaliated against him after he asserted charges of

discrimination.  Lastly, Plaintiff alleges that Harbinson aided and abetted US Airways'

discriminatory conduct in violation of the PHRA.

On January 10, 2014, Defendants filed an Answer, denying all liability.  (Doc. No. 5.)

Then, on January 22, 2014, Defendants filed a Motion for Judgment on the Pleadings pursuant to

Federal Rule of Civil Procedure 12(c).  (Doc. No. 7.)  Plaintiff opposes the Motion.  (Doc. No. 10.)  He requests that the Motion be denied and that he be permitted to amend his Complaint.  (Doc. No. 14 at 5.)

## III.    STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Ordinarily, in deciding a motion for judgment on the pleadings, the court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record."  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (citations omitted).  A court's consideration of any other documents or evidence outside the pleadings converts the motion for judgment on the pleadings into a motion for summary judgment.  See Moco Invs., Inc. v. United States, 362 Fed. App'x 305, 307 n.4 (3d Cir. 2010).

A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  See Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (explaining that "there is no material difference in the applicable legal standards" for Rule 12(b)(6) and Rule 12(c) motions).  Like a motion to dismiss, under Rule 12(c), "the trial court must view the facts in the pleadings in the light most favorable to plaintiff and must grant the motion only if the moving party establishes that no material issues of fact remains and that it is entitled to judgment as a matter of law."  Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986).  See also Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988)).  A motion for judgment on the pleadings will only be granted where "the plaintiffs would not be entitled to

relief under any set of facts that could be proved." <u>Green v. Fund Asset Mgmt., L.P.</u>, 245 F.3d 214, 220 (3d Cir. 2001).

## IV.   ANALYSIS

In Count I of the Complaint, Plaintiff alleges that Defendants denied him the Stores Department position because of his disability, in violation of the ADA.  (Doc. No. 1 at ¶ 46.)  He raises a parallel claim under the PHRA in Count III.  (<u>Id.</u> at ¶ 60.)  In Count II, Plaintiff alleges that Defendants further violated the ADA by retaliating against him after he reported claims of discrimination against US Airways.  (<u>Id.</u> at ¶ 52.)  He makes a parallel claim under the PHRA in Count IV.  (<u>Id.</u> at ¶ 66.)  Finally, in Count V, Plaintiff alleges that Defendant Harbinson aided and abetted Defendant US Airways in violating Plaintiff's rights under the PHRA.  (<u>Id.</u> at ¶ 71.) Defendants deny liability on each Count and have moved for judgment on the pleadings.  (Doc. No. 7.)

In their Motion, Defendants make two arguments as to why they are entitled to judgment as a matter of law.  First, Defendants assert that Plaintiff's claims for disability discrimination and retaliation under the ADA and PHRA are barred because Plaintiff filed his administrative complaints with the PHRC and EEOC well after the allotted time periods had expired.  (Doc. No. 7-1 at 4-5.)  Second, Defendants argue that Plaintiff's claim against Harbinson for "aiding and abetting" US Airways' alleged discrimination should be dismissed because Plaintiff did not name Harbinson in his administrative complaint and therefore did not exhaust his administrative remedies against this individual Defendant.  (<u>Id.</u> at 5.)

### A.  Plaintiff's Discrimination Claims Will be Dismissed Because They are Time Barred

Plaintiff's discrimination claims are barred under both the ADA and the PHRA because Plaintiff failed to properly file his administrative remedies within the required statutory time periods.  The "powers, remedies, and procedures" set forth in Title VII of the Civil Rights Act of

1964 ("Title VII") apply equally to the ADA.  42 U.S.C. § 12117(a).  Thus, under the ADA, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the challenged employment action.  42 U.S.C. § 2000e-5(e)(1).  See also Ruehl v. Viacom, Inc., 500 F.3d 375, 383 (3d Cir. 2007).  The PHRA also imposes a filing requirement.  Under the Pennsylvania statute, a plaintiff must file an administrative complaint with the PHRC within 180 days of the challenged employment action before he may file a claim in court.  43 Pa. Stat. Ann. § 959(h).  See also Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (stating that a plaintiff who "fails to file a timely complaint with the PHRC . . . is precluded from judicial remedies under the PHRA.").

Defendants argue that Plaintiff's claims for disability discrimination under the ADA and PHRA are barred because Plaintiff filed his administrative complaints with the PHRC and EEOC well after the allotted time periods had expired.  (Doc. No. 7-1 at 4-5.)  The facts alleged in the Complaint support the position of Defendants.  Plaintiff alleges that Defendants discriminated against him because of his disability, an anxiety disorder, when they denied him a position in the Stores Department.  (Doc. No. 1 at ¶ 46.)  In the Complaint, Plaintiff alleges that US Airways revoked his offer on July 3, 2008.  (Id. at ¶ 23.)  Accordingly, under the PHRA, Plaintiff was required to file a charge with the PHRC within 180 days, or by December 30, 2008.  Likewise, Plaintiff needed to file a charge with the EEOC within 300 days, or by April 29, 2009.  Plaintiff did not file his administrative complaint with these agencies until October 26, 2010.  It is clear from the face of the Complaint that Plaintiff's discrimination claims in Counts I and III are time barred.  Therefore, these Counts will be dismissed.

**B.  Plaintiff's Retaliation Claims Will be Dismissed Because They are Time Barred**

Defendants next argue that Plaintiff's retaliation claims under the ADA and PHRA are time barred as well.  (Doc. No. 7-1 at 4-5.)  In the Complaint, however, it is unclear which employment actions form the basis of Plaintiff's retaliation claims.  For example, Plaintiff states that he "believes the lack of any response to his May 2010 telephone calls and his August 2010 letter was in retaliation for his previous claims that [he] was denied a position because of [his] disability."  (Doc. No. 1 at ¶ 40.)  Elsewhere in the Complaint, he alleges that Defendants retaliated against him in violation of the ADA by "ultimately and repeatedly ignoring his requests for correction of his denial of the Stores Department position."  (Id. at ¶¶ 51-52.)  Plaintiff also alleges that Defendants retaliated against him in violation of the PHRA by "ultimately denying him the Stores Department position."  (Id. at ¶¶ 65-66.)

Plaintiff's retaliation claims based on Defendants' denial of his application for the position in the Stores Department are barred for the same reasons listed above in Section IV.A.  After Defendants denied Plaintiff the position on July 3, 2008, Plaintiff failed to file charges with the PHRC and EEOC within the respective 180 and 300 day time periods.  Furthermore, if Plaintiff bases his retaliation claims on Defendants' denial of his grievance, the claims are still barred.  Defendants denied Plaintiff's grievance on February 6, 2009.  Therefore, Plaintiff was required to file the charge with the PHRC within 180 days, or by August 5, 2009.  Likewise, Plaintiff needed to file a charge with the EEOC within 300 days, or by December 3, 2009.  Again, Plaintiff did not file his complaint with these agencies until October 26, 2010.

To the extent that Plaintiff's claims for retaliation are based on Defendants' lack of response to his requests to reverse the final decision denying him the Stores Department job, Plaintiff's claims are also time barred.  As noted previously, Defendants revoked the position on

July 3, 2008 and denied Plaintiff's grievance on February 6, 2009.  On May 6, 2010, over a year

later, Plaintiff called Harbinson "to seek relief concerning his employment with US Airways."

(Doc. No. 1 at ¶ 30.)  Harbinson told Plaintiff that he would call him back at the end of the week

but never did so; he also never responded to any of Plaintiff's other calls.  (Id. at ¶¶ 31-32.)  On

or about August 16, 2010, Plaintiff sent a letter to Harbinson, stating:

> [T]he grievance was denied.  I now believe the denial was in discrimination of my
> disability.  Thereafter, I contacted you to seek relief.
>
> ***
>
> I contacted you at the direction of Mr. Raymond to whom I was referred by Mr.
> Dietrich.  I took these actions in an effort to rectify my situation and to obtain an
> accommodation such that I could pursue employment in the Stores Department.

(Doc. No. 1, Ex. A.)  Plaintiff never received a reply to that letter.  Plaintiff contends that by

ignoring these requests, Defendants retaliated against him.

The Court agrees with Defendants that asking Harbinson to reconsider the company's

previous denial of Plaintiff's grievance is not a discrete act of retaliation sufficient to restart the

applicable time limits for filing charges with the PHRC and EEOC.  In support of this argument,

Defendants rely on a case from the First Circuit, Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121

(1st Cir. 2009).  Tobin is an ADA case in which the plaintiff, an insurance salesman, suffered

from bipolar disorder and was terminated by his employer, Liberty Mutual.  Id. at 124.  After

failing to meet certain sales quotas due to his disability, the plaintiff repeatedly asked Liberty

Mutual to help him achieve his performance goals by providing him with two specific

accommodations.  Id. at 127.  Liberty Mutual first rejected the plaintiff's accommodation

requests no later than 1997, and the plaintiff did not file his failure to accommodate charge with

the EEOC until July 2, 2001, well after the 300 day period had expired.  Id. at 129, 130.

However, the plaintiff alleged that his administrative complaint was timely because Liberty

11

Mutual consistently denied his repeated requests for accommodations made between February 1999 and January 2001.  Id. at 132.

Liberty Mutual contended that a plaintiff may not delay or restart the limitations period by making repeated requests for the same accommodations.  Id. at 131.  The Court disagreed with this argument and found that each denial of the plaintiff's repeated requests for accommodations constituted a discrete act that formed the basis of a separate claim of discrimination and carried with it a new statute of limitations.  Id. at 132.  In reaching this decision, the Court explained:

> It is settled that an employee may not extend or circumvent the limitations period by requesting modification or reversal of an employer's prior action.  However, it is apparent from the Supreme Court's discussions in Morgan and Ledbetter that an employee who renews his request for particular accommodations may bring suit based on a new "discrete act" of discrimination if the employer again denies his request. In Morgan, the Court explicitly stated that "[t]he existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed."

> Liberty Mutual's argument misapprehends the difference between instances in which the employer commits multiple acts, each of which is independently discriminatory, and those circumstances in which an employee attempts to rely on either the ongoing effects of the employer's single discriminatory act or the employee's efforts to obtain reversal of that singular act of alleged discrimination.

Id. at 131 (internal quotations omitted).

Tobin involved a failure to accommodate claim, not a claim based on retaliation, which is the claim in the present case.  Regardless, Tobin is still instructive here.[6]  In Tobin, the Court of Appeals noted that "[i]t is settled that an employee may not extend or circumvent the limitations period by requesting modification or reversal of an employer's prior action."  Id. at 131.  In making this observation, the Court pointed to Delaware State Coll. v. Ricks, a case in which the

---

[6] Plaintiff and Defendants all rely on Tobin.

12

Supreme Court explained that "[m]ere requests to reconsider [an employer's decision] . . . cannot extend the limitations periods applicable to the civil rights laws." 449 U.S. 250, 261 n.15 (1980). See also Martin v. Sw. Virginia Gas Co., 135 F.3d 307, 310 (4th Cir. 1998) ("An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.") (quoting Graehling v. Vill. of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995)).  The Tobin Court also made a distinction between instances in which the employer commits multiple, independent acts of discrimination and those other circumstances in which an employee bases his claims on the ongoing effects of the employer's single discriminatory act or the employee's efforts to obtain reversal of that singular act of alleged discrimination.  Id. at 131.

In the instant case, Plaintiff bases his retaliation claim on multiple failed attempts to obtain reversal of a singular act of discrimination—the revocation of the Stores Department position.  Defendants' alleged acts of ignoring Plaintiff's requests to overturn the grievance denial were not fresh acts of retaliatory discrimination.  See Martin, 135 F.3d at 310; Graehling, 58 F.3d at 297.  Moreover, Plaintiff's "mere requests to reconsider" Defendants' decision are not sufficient to extend or circumvent the statutory limitations periods.  See Ricks, 449 U.S. at 261 n.15; Tobin, 553 F.3d at 131.  Therefore, Plaintiff's retaliation claims remain barred because Plaintiff failed to properly file his administrative complaints within the prescribed time limits.

## C.  Plaintiff Will Not be Granted Leave to Amend the Complaint

As noted above, Plaintiff's Complaint includes claims for disability discrimination, retaliation, and aiding and abetting.  Plaintiff did not raise a failure to accommodate claim in his Complaint.  However, relying on Tobin, Plaintiff contends that his May 2010 phone calls and August 2010 letter to Harbinson were requests for an accommodation, the denials of which were discrete acts of discrimination upon which he may bring suit for failure to accommodate.  (Doc.

13

No. 10 at 19-20; Doc. No. 14 at 1-4.)  Plaintiff requests leave to amend his Complaint to include these additional claims.  Defendants oppose Plaintiff's request.  For reasons that follow, the Court will deny Plaintiff's request to amend the Complaint.

As quoted above, "an employee who renews his request for particular accommodations may bring suit based on a new 'discrete act' of discrimination if the employer again denies his request." Tobin, 553 F.3d at 131.  According to Plaintiff, his two requests for reconsideration amounted to requests for an accommodation when he called Harbinson on May 6, 2010 and again when he wrote to Harbinson on August 16, 2010.  (Doc. No. 10 at 19-20; Doc. No. 14 at 2.)  Plaintiff contends that his requests for an accommodation were "effectively denied by non-response" by Defendants.  (Doc. No. 14 at 3.)  Following the logic of Tobin, Plaintiff argues that each denial of these two requests were discrete acts of discrimination, triggering new deadlines to file charges with the PHRC and EEOC.  Plaintiff filed his first charge with these agencies on October 26, 2010, which falls within the statutory periods for both requests.[7]  Thus, Plaintiff contends that his failure to accommodate claims are not time barred, and the Court should therefore afford him leave to amend the Complaint to include them.

Defendants disagree with the notion that Plaintiff's telephonic and written requests to Harbinson constituted requests for an accommodation.  (Doc. No. 13 at 3.)  Instead, according to Defendants, Plaintiff made these communications in order to have Harbinson overturn the grievance denial and award Plaintiff a position within the Stores Department.  (Id.)  The Court is not convinced that Plaintiff made a sufficient request for an accommodation.

---

[7] Based on the May 6, 2010 communication, Plaintiff had until November 2, 2010 to file a charge with the PHRC.  Based on his August 16, 2010 letter, Plaintiff had until February 12, 2011 to do the same.

First, as noted by Plaintiff (Doc. No. 10 at 17), "[a]n employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be 'sufficiently direct and specific' to give the employer notice of the needed accommodation." Tobin, 553 F.3d at 129 (citations omitted).  Regarding his May 6, 2010 telephone call to Harbinson, Plaintiff provided the following account in the pro se charge he filed with the PHRC:

> [O]n or about May 6, 2010, I contacted Ronald Harbinson . . . by telephone to seek relief concerning my employment with U.S. Airways.
> ***
> I have a disability.  U.S. Airways is aware of my disability.  I was given an opportunity to take the position in the Stores Department.  I contacted Mr. Harbinson at the direction of Mr. Raymond to whom I was referred by Mr. Dietrich.  I took these actions in an effort to rectify my situation and to obtain an accommodation such that I could pursue employment in the Stores Department.
> ***
> I am certain that I can perform the duties in of [sic] the Stores Department job with or without a reasonable accommodation.
>
> I contacted Mr. Harbinson to seek his help.

(Doc. No. 10, Ex. A) (emphasis added).  Similarly, in his letter to Harbinson dated August 16, 2010, Plaintiff stated:

> I previously spoke with [Mr.] Raymond concerning my January 2009 grievance proceeding that I believe were unfairly decided.  Mr. Raymond said he could not alter the decision but said I could speak with you.  Mr. Raymond indicated that you had the authority to help me.  I spoke with Mr. Raymond at the suggestion of Matthew Dietrich, a US Airways Human Resources Representative for the Maintenance Department.  Mr. Dietrich is fully aware of the history of my employment.  Under these circumstances I spoke with you.
> ***
> I have a disability.  US Airways is aware of my disability.  I was given an opportunity to take the position in the Stores Department.  I contacted you at the direction of Mr. Raymond to whom I was referred by Mr. Dietrich.  I took these actions in an effort to rectify my situation and to obtain an accommodation such that I could pursue employment in the Stores Department.
> ***
> I am certain that I can perform the duties in of [sic] the Stores Department job with or without a reasonable accommodation.  I contacted you to seek your help.

15

(Doc. No. 1, Ex. A) (emphasis added).

As noted in <u>Tobin</u>, Plaintiff's "request must be 'sufficiently direct and specific' to give the employer notice of the needed accommodation." 553 F.3d at 129. In <u>Tobin</u>, after the plaintiff's disability affected his sales performance, he made two very specific requests for an accommodation: (1) He requested that Liberty Mutual provide him with increased support staff to respond to customer service calls; and (2) He requested that Liberty Mutual assign him to manage a "Mass Marketing" account. <u>Id.</u> at 127. In this case, construing the two communications liberally, Plaintiff failed to make similar direct and specific requests for an accommodation. Instead, Plaintiff simply says he contacted Harbinson in order to obtain an accommodation to pursue employment in the Stores Department.

It is unclear what specific accommodation Plaintiff actually sought. In fact, when the Court asked Plaintiff's counsel for clarification on the accommodation at the hearing on Defendants' Motion on March 14, 2014, counsel explained that Plaintiff wanted to be permitted to work while taking anxiety medication. Plaintiff now contends that in his letter to Harbinson:

> [H]e intended to say that he would require an accommodation regarding his need to take medication, subject to the interactive process, until such time as he could determine whether, with training and experience, he could perform the new position without the need for his medicine and thus without an accommodation.

(Doc. No. 21 at 8.) As an initial matter, there are no allegations that there was an open position in the Stores Department that Plaintiff was allegedly applying for when he wrote to Harbinson in August 2010. In fact, Plaintiff's letter acknowledges that the position had been filled by someone else. (Doc. No. 1, Ex. A) ("As to the position, I was directed to take by reporting to work on July 3, 2008 and worked for approximately two hours before being told I did not have the job, I understand it was subsequently filled by another person.").

16

More importantly, neither charge filed with the administrative agencies mentions anything about a request to take medication.  Likewise, the Complaint is completely devoid of any facts which demonstrate that Plaintiff was prohibited from taking anxiety medication at work or that he sought permission to do so.  Moreover, in his letter to Harbinson, Plaintiff even acknowledged that he could perform his duties with or without a reasonable accommodation and says nothing about a need to take medication.  (Id.)  Plaintiff's alleged requests fail to give Defendants any notice of the needed accommodation.  Because Plaintiff's efforts to correct this defect by amending the Complaint would be futile, the Court will deny his request to do so.

### D.  Plaintiff's Aiding and Abetting Claim Will be Dismissed

Lastly, Defendants argue that Plaintiff's final claim against Harbinson for aiding and abetting US Airways' alleged discriminatory conduct also fails because Plaintiff did not name Harbinson as a Respondent in his PHRC charge.  (Doc. No. 7-1 at 10.)  The Court need not address the merits of Defendants' final argument.  Because the Court has dismissed all of Plaintiff's federal claims, it will decline to exercise supplemental jurisdiction over this remaining state law claim.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)[8] if—the district court has dismissed all claims over which it has original jurisdiction").  Thus, Plaintiff's aiding and abetting claim will also be dismissed.

### V.  CONCLUSION

For the aforementioned reasons, Plaintiff fails to state a claim for which relief can be granted.  Defendants' Motion for Judgment on the Pleadings will be granted, and Plaintiff's

[8] Subsection (a) of the statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

Complaint will be dismissed in its entirety.  Plaintiff will not be granted leave to amend.  An appropriate Order follows.